FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

2014 JUL 18  AM 9: 10

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

Jennifer Goodall )
)
)
Plaintiff, )
)
)
)
vs. )
)
)
Comprehensive Women's Health Center, )
Bayfront Medical Health Group; )
Bayfront Health Port Charlotte; )
Stephen B. Russell as the State Attorney for )
Florida's Twentieth Judicial Circuit; )
John Doe I in his or her official capacity as )
Special Assistant State's Attorney; John )
Doe(s) II, physicians providing obstetric care )
at Bayfront Health Port Charlotte. )
Defendants. )
)

2: 14 -c v- 399 -FtM-38CM

CASE NO. _____

SHERI POLSTER CHAPPELL

CAROL MIRANDO

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, DECLARATORY JUDGMENT, AND DAMAGES

### INTRODUCTION

1.     Plaintiff Jennifer Goodall is 40 weeks pregnant with her fourth child. Her due date is

tomorrow: July 18th, 2014. On July 10th, 2014, at a prenatal care appointment just eight days

before her due date, Defendant Comprehensive Women's Healthcare, Bayfront Medical Health

Group, gave her a letter stating, *inter alia*, that the hospital and/or practice would 1) report her to

state child welfare services, 2) institute a state judicial proceeding against her directed at patients not

COMPLAINT 1

competent to consent to medical care and, 3) if she presented to Bayfront Health Port Charlotte in labor, that the hospital would force her to have cesarean surgery without her consent.

2.      Defendants made these threats, cloaked in state power, based on Ms. Goodall's thoughtful and well-informed decision rejecting their recommendation to agree to undergo a cesarean surgery before any actual need for it exists. Rather, Ms. Goodall wishes to pursue a trial of labor to attempt to deliver vaginally, while under medical care in a hospital where she may consent to and receive medical interventions, including surgery, if complications arise during labor that require such interventions for her health and/or the health of her baby.

3.      In short, Ms. Goodall has weighed the risks and benefits to her and her unborn child, as all patients, including pregnant women, are entitled by law and ethics to do, and has made a decision to try to deliver her baby vaginally unless and until a medical complication arises that would change the risk/benefit analysis. Ms. Goodall thus seeks an immediate temporary restraining order that prohibits Defendants from carrying out their threatened actions; preliminary and permanent injunctive relief; a declaratory judgment to deter this and other hospitals from future violations of the rights of pregnant women; and damages in an amount to be proven at trial.

4.      As a result of these threats, Ms. Goodall has experienced great distress during the final days of her pregnancy. She has had to seek legal assistance, and has had to search - thus far in vain - for another health care provider that will treat her. Additionally, she has experienced great fear and worry that her rights to care of her children will be violated as a result of the threatened report to Child Welfare authorities and that she will be subjected to surgery without her consent. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

5.    This action arises under 42 U.S.C. § 1983, the laws and Constitution of the United States, and the laws and Constitution of Florida.

6.    This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 and §1334(a). This court has supplemental jurisdiction of Plaintiff's claims arising under the laws and constitution of the state of Florida, pursuant to 28 U.S.C. §1367(a).

7.    Under 28 U.S.C. § 2201(a) and § 2202, and under Fed. Rule Civ. P. 57, this court has jurisdiction to issue Plaintiff's requested declaratory relief.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and M.D. Fla. R. 1.02(b) because the actions complained of occurred and the Defendants are located in Charlotte County, Florida.

## THE PARTIES

9.    Plaintiff Jennifer Goodall is a pregnant woman residing in Lee County, Florida, who has been receiving health care from Comprehensive Women's Health Care, Bayfront Health Medical Group, and who has been planning to deliver her baby with that practice at Bayfront Health Port Charlotte.

10.    Defendant Bayfront Health Port Charlotte (BHPC) is a hospital located in Charlotte County, Florida.

11.    Defendant Comprehensive Women's Health Care, Bayfront Health Medical Group (CWHC) is a medical practice located in Charlotte County, Florida, offering obstetrics and gynecology. CWHC has been providing obstetrical medical care to Plaintiff.

COMPLAINT 3

12.     Defendant Stephen B. Russell is the State Attorney for the State of Florida's Twentieth Judicial Circuit, including Lee and Charlotte Counties, and is sued in his individual and official capacities.

13.     Defendant John Doe I, upon information and belief,  is the Special Assistant State's Attorney - typically, an attorney for a hospital - who is given specific authority under *Debreuil* proceedings to act under color of state law and seek judicial authority to engage in medical interventions despite a patient's refusal to consent. He is sued in his official capacity.

14.     Defendant(s) John Doe II, upon information and belief, are any and all obstetricians, obstetric surgeons, and other labor and delivery health care providers employed by, working under contract for, or who have hospital privileges with BHPC that may operate on or participate in an operation on Plaintiff without her consent if she presents to BHPC in labor.

## STATEMENT OF FACTS

15.     Jennifer Goodall is currently almost 40 weeks pregnant, with an estimated due date of July 18, 2014.

16.     40 weeks is considered full-term for most women.

17.     Ms. Goodall has had three prior deliveries by cesarean surgery, in 2003, 2006, and 2010, and has been planning for this entire pregnancy, her fourth, to attempt to deliver vaginally unless and until medical complications during labor necessitate medical intervention. This is known as "trial of labor after cesarean" (TOLAC).

18.     Ms. Goodall wishes to have a TOLAC to avoid, to the extent possible, the risks to her and her baby that are posed by invasive surgery over three pre-existing surgical scars, minimize

her healing time so that she may better care for her newborn and three older children, and to reduce the risks to her future fertility.

19.     As she informed Defendants, Ms. Goodall will consent to medical interventions, including surgery, if medical complications arise during labor that require such interventions to protect her health and/or the health of her baby.

20.     Ms. Goodall made her wishes known to Dr. Amy Young and Dr. Nay Hoche when she transferred to their practice in early June of 2014, and believed, as of July 10, 2014, that these doctors understood her decisions and would abide by them.

21.     On July 10, 2014, at 38 weeks, 6 days gestation, a woman from BHPC came to Ms. Goodall's home and gave her a letter addressed to her from Cheryl Tibbett, Chief Financial Officer of BHPC (hereinafter "the Letter," attached as Exhibit 1). The Letter stated that the hospital's ethics committee had reviewed her case, and that the hospital intends to (1) "contact the Department of Children and Family Services about [Ms. Goodall's] refusal to undergo a Cesarean section," (2) "begin a process for an Expedited Judicial Intervention Concerning Medical Treatment Procedures . . . relating to the delivery of [her] child," and (3) perform a cesarean section "with or without [Ms. Goodall's] consent" in the event that she presents to the hospital in labor.

22.     BHPC is 45 minutes away from Ms. Goodall, and is the only hospital near her that serves women delivering vaginally after cesarean section.

23.     Ms. Goodall has made numerous attempts since receiving the Letter on July 10th to find an alternative obstetrical practice that will attend her labor, but has been unable to find one.

24.     Upon information and belief, Defendants have a policy or practice of invoking or threatening to invoke judicial intervention to coerce pregnant women to undergo medical confinement, treatment, and procedures to which they would not otherwise consent.

25.     Upon information and belief, in response to initiation of *Dubreuil* proceedings by BHPC, Defendant Russell has a policy or practice of deputizing the hospital's attorney as a Special Assistant State's Attorney to represent the interest of the state.

26.     Upon information and belief, the deputy Special Assistant State's Attorney never ceases representing the interests of the hospital.

27.     Upon information and belief, emergency petitions to authorize medical treatment are heard on an expedited basis, while a pregnant woman is in labor or near delivery, preventing application of any semblance of due process, with pregnant women sometimes denied the assistance of counsel, and in all cases without any of the procedural protections including an opportunity to call experts and to bring an appeal (even on an emergency basis).

28.     Upon information and belief, in no case where a court order has been sought against a pregnant woman has she been able to call expert witnesses on her behalf.

29.     According to experts in medical ethics, including the Committee on Ethics for the American Congress of Obstetricians and Gynecologists, the foremost national professional association for obstetrical physicians, threatened or actual legal interventions to force pregnant women to undergo a course of treatment deemed to be in the fetus's welfare erode patient autonomy and are not justified.

30.     In addition to their legal duties, health care providers have an ethical obligation to ensure that their patients give their informed consent to any medical intervention, including surgery. They have additional ethical duties (beyond any such legal duty) not to abandon their patients.

31.     Ms. Goodall understands the statements contained in the Letter to mean that the hospital will or has already initiated a civil child welfare investigation through the Department of Children and Family Services, that the hospital will or has initiated an Expedited Judicial Intervention Concerning Medical Treatment Procedures, in which the State's Attorney or a Special Assistant State's Attorney could seek a court order to deprive her of her liberty, forcing her to submit to unwanted, major, and at this point in time unnecessary medical intrusions, and that, regardless of whether it obtains such a court order, the hospital will perform cesarean surgery without her consent if she presents at the hospital in labor.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Fourteenth Amendment to the U.S. Constitution (Due Process) and 42 U.S.C. § 1983**

32.     Plaintiff incorporates the allegations set forth in paragraphs 1-31 as fully set forth herein.

COMPLAINT 7

33.     Proceedings in this case began when, invoking state authority and judicial process, Defendants informed Ms. Goodall in writing on July 10, 2014, that they intended to report her to child welfare authorities and seek judicial intervention requiring her to submit to surgery without her consent.

34.     The Defendants' policies and practices regarding such reports and judicial proceedings provide insufficient safeguards against the erroneous deprivation of the fundamental interests of Ms. Goodall to the integrity of her person, the constitutional right to medical decision-making, her right to privacy, equal protection of the law, and her fundamental right to the care, custody, and control of her children. With her due date looming, Ms. Goodall will be subjected to a summary judicial proceeding and, given the timing and the physical fact of labor and childbirth, will have no meaningful opportunity to be heard. Similarly, she is left with no way to challenge the wrongful reporting to child welfare services until after the harm - intrusive and unwarranted state intervention in her family life - has occurred. These deprivations violate Ms. Goodall's rights to procedural due process under the Fourteenth Amendment to the United States Constitution.


## SECOND CAUSE OF ACTION
### Fourteenth Amendment to the U.S. Constitution (Privacy) and 42 U.S.C. § 1983

35.     Plaintiff incorporates the allegations set forth in paragraphs 1-34 as fully set forth herein.

COMPLAINT 8

36.     The Fourteenth Amendment to the United States Constitution protects Ms. Goodall's rights to privacy, including her right to medical decision-making, privacy of confidential disclosures, and the sanctity of her familial relationships and the care, custody, and control of her children.

37.     Defendants' invocation of state authority and threats in response to Ms. Goodall's decision not to obey their treatment recommendations violates these constitutional rights, including the right to refuse unwanted medical treatments, the right to bodily integrity and, potentially, Ms. Goodall's right to life through court-ordered surgery.

### THIRD CAUSE OF ACTION
#### Fourteenth Amendment to the US Constitution (Equal Protection) and 42 U.S.C. § 1983

38.     Plaintiff incorporates the allegations set forth in paragraphs 1-37 as fully set forth herein.

39.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits discrimination on the basis of gender, absent an important state interest that is demonstrably substantially related to the challenged action.

41.     Here, Defendants have, under cloak of state authority, leveled baseless state procedures involving child welfare at Ms. Goodall (although, notably, not at her husband), and invoked an additional baseless state procedure (expedited judicial review proceedings that are limited to competency hearing, when there is no allegation or even a suggestion that Ms. Goodall lacks legal or cognitive competence to make her own medical decisions) because of disagreement with her medical decisions, decisions that all competent adult patients of all genders are legally,

ethically, and constitutionally entitled to make. No state interest - even a proclaimed interest in fetal life - can possibly be advanced by these baseless and unwarranted procedures.

40.     Defendants' punitive interventions discriminate against Ms. Goodall on the basis of sex, in that only women may be deprived of their medical decision-making and other constitutional rights without a finding of mental incapacity and for the benefit of another person, born or unborn. Such discrimination on the basis of gender violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## FOURTH CAUSE OF ACTION
### Article I, Section 23 of the Florida Constitution

41.     Plaintiff incorporates the allegations set forth in paragraphs 1-40 as fully set forth herein.

42.     Article I, Section 23 of the Florida Constitution guarantees every person the right "to be let alone and free from government intrusion into the person's private life." Art. I, sec. 23, Fla. Const. This express and fundamental right to privacy encompasses the right to medical decision-making, including the right to refuse treatment, and to bodily integrity.

43.     By invoking state authority and threatening to perform surgery upon her without her consent, Defendants have violated Ms. Goodall's right to privacy protected by the Florida Constitution.

## FIFTH CAUSE OF ACTION
### Article I, Section 9 of the Florida Constitution

44.     Plaintiff incorporates the allegations set forth in paragraphs 1-43 as fully set forth herein.

45.     Proceedings in this case began when, invoking state authority and threatening

judicial process, Defendants informed Ms. Goodall in writing on July 10, 2014, that they intended to

report her to child welfare authorities and seek judicial intervention requiring her to submit to surgery

without her consent.

46.     The Defendants' policies and practices regarding such reports and judicial

proceedings are procedurally deficient and violate Ms. Goodall's rights to procedural due process

under Article I, Section 9 of the Florida Constitution.

### SIXTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

47.     Plaintiff incorporates the allegations set forth in paragraphs 1-46 as fully set forth

herein.

48.     Defendants engaged in outrageous conduct towards Ms. Goodall, with the intention

to cause or with reckless disregard for the probability that she, a nearly full-term pregnant woman

soon to deliver, would suffer severe emotional distress upon receipt of Defendant's letter threatening

her with forced surgery and state intervention into her family life. To the extent that certain

Defendants engaged in outrageous conduct, the remaining Defendants adopted and ratified said

conduct with wanton and reckless disregard for the harmful impact on Ms. Goodall. As a proximate

result of Defendant's conduct, Ms. Goodall has suffered and continues to suffer severe emotional

distress and fear that she will have no medical care to attend her labor and childbirth, or will be

forced into cesarean surgery against her will (a battery).

### SEVENTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**

COMPLAINT 11

49.     Plaintiff incorporates the allegations set forth in paragraphs 1-48 as fully set forth herein.

50.     All Defendants knew or reasonably should have known that threatening a patient, just days away from giving birth, with forced surgery (a battery), and state judicial and child welfare intervention into her medical decision-making and familial privacy, would and did proximately cause Ms. Goodall to experience emotional distress.

## EIGHTH CAUSE OF ACTION
### Assault

51.     Plaintiff incorporates the allegations set forth in paragraphs 1-50 as fully set forth herein.

52.     Defendants, cloaking themselves in state authority, explicitly and intentionally threatened Ms. Goodall with an unlawful threat to do violence to her person, including all the bodily invasions of a forced surgery (cutting her with a knife, injecting her with anesthetic, inserting a catheter, and inserting an intravenous line), as well as the possible risks to her health and life of that surgery. The mantle of state authority, as well as Defendants' position as Ms. Goodall's health care provider and as the hospital where she planned to give birth, ensured that Defendant had the apparent ability to carry out these threats. Because her baby was due in just eight days, and she could go into labor at any time, Ms. Goodall's fear of imminent violence was well-founded.

53.     As a result of her fear of imminent physical harm, Ms. Goodall has suffered anguish and emotional distress, all to her damage in amounts to be proven at trial.

## NINTH CAUSE OF ACTION
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a) and § 2202

COMPLAINT 12

54.    Plaintiff incorporates the allegations set forth in paragraphs 1-53 as fully set forth herein.

55.    A valid case or controversy exists sufficient for this court to declare the rights and remedies of the parties in that the Plaintiff intends to give birth at BHPC and will not consent to cesarean surgery until it becomes medically necessary.

56.    Medical personnel who practice at Defendant hospital BHPC have made credible threats of legal action and battery against the Plaintiff.

57.    There is a controversy between Plaintiff and Defendants regarding Plaintiff's rights and whether Plaintiff loses her rights as a person under the Florida and United States Constitutions as a result of her pregnancy and seeking to continue it to term.

58.    Ms. Goodall contends that, under the Florida and United States Constitutions, she does not lose her right to privacy, medical decision-making, bodily integrity, informed consent/refusal, due process of law, or any other right as a result of becoming pregnant or at any point during pregnancy.

59.    Defendants' actions indicate their contention that women may be deprived of the above-listed rights to advance asserted interests in potential human life, effectively exempting women who are pregnant from state and federal constitutional guarantees.

60.    Ms. Goodall has the requisite standing to request declaratory judgment in that her constitutional rights are at stake. Moreover, this controversy is ripe for determination at this time because although Plaintiff does not know whether Defendants have instituted judicial proceedings,

past history indicates that court orders have been sought under similar circumstances as recently as 2009.

61.     The nature of the rights in question means that, for there to be any effective relief, the court must act prior to the deprivation of rights, and there is only a very short window - a matter of days - in which immediate meaningful court relief can be granted.

62.     A judicial declaration of Plaintiff's rights is necessary and appropriate at this time for the reasons stated above, and to prevent future controversies between pregnant women and Defendants arising out of similar factual circumstances, which are capable of repetition but evading review.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiff Jennifer Goodall respectfully requests that:

A.  A temporary restraining order issue enjoining Defendant BHPC and Defendant Comprehensive Women's Health Care and their employees, administrators, attorneys, or agents, as well as Defendant Russell, his office, employees, agents, or deputies, as well as any Special State's Assistant Attorney who has been or may be deputized, from seeking an emergency order for medical treatment against Jennifer Goodall, or appointment of a guardian with the power to authorize such treatment during the pendency of this action; and

B.  A temporary restraining order issue enjoining Defendant BHPC and Defendant Comprehensive Women's Health Care and their employees, administrators, attorneys, or agents, as well as Defendant Russell, his office, employees, agents, or deputies, as well as any Special State's Assistant Attorney who has been or may be deputized, from reporting Jennifer Goodall to state

COMPLAINT 14

child welfare authorities on the basis that she has asserted her right to refuse to give her advance consent to cesarean surgery unless and until, during a trial of labor, medical complications actually arise; and

C. A temporary restraining order issue enjoining Defendant BHPC and Defendant Comprehensive Women's Health Care and their employees, administrators, attorneys, or agents, as well as Defendant Russell, his office, employees, agents, or deputies, as well as any Special State's Assistant Attorney who has been or may be deputized, from subjecting Ms. Goodall to cesarean surgery against her will and without her consent if and when she presents to BHPC in labor; and

D. On final hearing herein, said injunction be made permanent; and

E. This Court issue a judgment declaring that Plaintiff does not lose her rights under the Florida and United States Constitutions, including the right to privacy, medical autonomy, bodily integrity, informed consent, the right to counsel, and any other rights, as a result of becoming pregnant or at any point during her pregnancy; and

F. Plaintiff be awarded such other and further relief as is just and proper, including damages in an amount to be determined at trial.

Respectfully submitted this __ day of July, 2014.


_____
Patricia E. Kahn
Florida Bar Identification Number 310786
635 Thirty-Eighth Avenue
Seattle, Washington 98122
206/390-9675

206/324-2878 (fax)
pkahnlaw@msn.com

Farah Diaz-Tello*
*Admitted to practice in New York, Application for Special Admission and Motion Instanter for
Admission to be filed
Sara Ainsworth *
*Admitted to practice in Washington State, Application for Special Admission to be filed
National Advocates for Pregnant Women
15 W 36th St, Ste. 901
New York, NY 10018
(ph.) 212-255-9252 x31
(f.) 212-255-9253
fdt@advocatesforpregnantwomen.org


Counsel for Jennifer Goodall

COMPLAINT 16